### JORDAN v. NEECE.

1. DEEDS—COPARTNERSHIP.—A grantor, in consideration of love and affection, made her deed, wherein she declared that she did "give and release unto him so much land at, along, below, and above the mill dam, upon my land as will serve for the purpose of cutting a race and for waste-way and mill, all conveniences in putting up same and lumber yards, also free ingress and egress to and from said mill or pond through my lands, and also of backing water upon my land to the height of thirteen feet live water, and all the privileges of said mill two-thirds of the time, reserving to myself one-third part of said mill after paying one-third part of whatever amount it may cost him in putting in operation said mill." *Held*, that the words used in this deed were sufficient to convey an estate in the land, and so operated and did not create a copartnership between grantor and grantee.

2. ESTATE FOR LIFE—GENERAL WARRANTY.—The deed had no *habendum* clause, but contained a general warranty to the grantee and his heirs. *Held*, that there being no grant of an inheritance, the grantee took only an estate for life, which could not be enlarged into a fee by the warranty clause.

3. TENANT FOR LIFE—PARTITION.—A person holding an estate for life in two-thirds of a mill site, may demand partition between himself and the owner in fee of the remaining third.

Before KERSHAW, J., Aiken, November, 1889.

This was an action by John Jordan against Idella L. Neece and John A. Neece, commenced July 10, 1888. The Circuit decree, omitting its statement of the facts, was as follows:

As matter of law, I find that plaintiff has misconceived his interest under said deeds. They were not conveyances of the land, but merely covenants to stand seized of the same to the use, and for the purposes, of the copartnership so long as it should continue, and no longer. From the nature of the copartnership, as developed by the proof, it was without limit as to time, and there was no provision for its dissolution by either party. Under these circumstances, either party had the right to determine it, and it was practically dissolved when the defendants refused their consent to the rebuilding of the mill after its destruction by fire. Having fulfilled the purposes to which it had been dedicated, the land reverts or remains in the several parties to whom it belongs,

freed of the uses to which it had been subjected, and is held in severalty, or at least the lands of the defendant are not held as tenants in common with the plaintiff.

The learned counsel for the plaintiff has insisted that the effect of the warranty in the several deeds operates, if not to convey an absolute estate, at least estops the defendants so that they cannot dispute plaintiff's claim of title. It is conceded that a warranty cannot enlarge an estate. It can do no more than to protect the estate granted: hence it is said in the Touchstone from Lord Coke, "that if a lessor by deed release to his lessee for life, and warrant the land to him and his heirs, this doth not make his estate greater," which is the case here. This principle would be violated if we should give the effect to the warranty claimed by the plaintiff. Holding these views, it is ordered, adjudged, and decreed, that the complaint herein be dismissed, and that the plaintiff, John Jordan, pay the costs of this action.

The plaintiff appealed on the following grounds:

1. That his honor erred in finding that the plaintiff claimed that he was a tenant in common in the land in question only by virtue of the deeds specified by him, whereas he should have held that said claim was based, not only on the deeds, but the possession held thereunder and the conduct of Mrs. McGrew and those holding under her; and he should have further held that by virtue of said deed, said possession, and said conduct, the plaintiff and the defendant, Mrs. Neece, were tenants in common in the tract of land of thirty acres, more or less, on which the mill was situate, and he should have ordered a writ in partition to issue as to the same.

2. That his honor erred in finding as matter of law that the deeds put in evidence were not conveyances of the land, but merely covenants to stand seized of the same to the use of the co-partnership so long as it continued and no longer, whereas the papers can bear no such construction; and having found that the deed from Mrs. McGrew to Jordan was a covenant to stand seized to uses, and it not specifying a use for a partnership, but showing on its face that it was intended as an absolute deed without

limitation, he should have held it was a covenant to stand seized for the use of John Jordan and his heirs absolutely.

3. That his honor erred in holding that the refusal of the defendants to rebuild the mill caused a reverter of the land to the heirs of Mrs. McGrew and to the defendants by their deeds, and in thereby finding, he takes from the plaintiff the land deeded him by Mrs. McGrew and gives him nothing, having erroneously presumed that plaintiff had deeded some land to Mrs. McGrew.

4. That his honor erred in not holding that Mrs. McGrew and the defendants claiming under her, are estopped by deed and conduct from denying that the plaintiff and Mrs. Neece are tenants in common of the land in question.

5. That his honor erred in not holding that the plaintiff having held and used the land in question as a tenant in common with Mrs. McGrew, and those holding under her, to the extent of two-thirds, and they consenting to this, that such holding gave to him a title absolute to said two thirds.

*Messrs. Henderson Bros.*, for appellant.

*Mr. Walter Ashley*, contra.

April 25, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff and his mother-in-law, Mrs. Catherine A. McGrew, being the owners of adjacent tracts of land, separated by the waters of Dean Swamp, on the first day of October, 1869, Mrs. McGrew executed a paper under her hand and seal, in the presence of two subscribing witnesses, of which the following is a copy : "Know all men by these presents, that I, Catherine A. McGrew, * * * for the love and affection I have and bear to my son-in-law, John Jordan, * * * do give and release unto him so much land at, along, below, and above the mill dam upon my land, known by the name of the Mill's Old Dam, and adjoining his, as will serve for the purpose of cutting a race and for waste way and mill, all conveniences in putting up same and lumber yards, also free ingress and egress to and from said mill or pond through my lands, and also of backing water upon my land to the height of thirteen feet live water,

and all the privileges of said mill two-thirds of the time (reserving to myself one third part of said mill after paying one-third part of whatever amount it may cost him (Jordan) in putting in operation said mill), the same being situated on Dean Swamp, * * * the right to which I do hereby bind myself, my heirs, executors, and administrators to warrant and forever defend unto the said John Jordan, his heirs and assigns forever (reserving to myself the same privileges given and relinquished to him)."

Soon after the execution of this paper, the plaintiff proceeded to erect a mill at a cost of something over two thousand dollars, Mrs. McGrew giving her note to plaintiff for the amount agreed upon as her third of the expense incurred in erecting the mill. For a while the mill was used by the parties in accordance with the terms of said paper, the plaintiff having the exclusive use for two thirds of the time and Mrs. McGrew the exclusive use for one-third. After a time, however, they leased the mill to one Tyler for the term of ten years, the plaintiff receiving two-thirds and Mrs. McGrew one-third of the rent. Before the expiration of this lease it was surrendered, and subsequently the plaintiff and Mrs. McGrew divided the use of the mill as before, until the 9th of February, 1875, when Mrs. McGrew conveyed her interest to her daughter, Mrs. Holman, her husband, B. C. Holman, and the defendant, Idella L., who subsequently became the wife of the defendant, John A. Neece; and the use of the mill continued to be divided as before between the plaintiff and these grantees of Mrs. McGrew until the mill was destroyed by fire some time in the year 1875.

On the 8th of February, 1879, Holman and wife conveyed their interest in the mill to the defendant, Mrs. Neece, in pursuance of a previous agreement to that effect; and on the 8th of July, 1878, though prior to the last mentioned conveyance, but subsequent to the agreement that the same should be made, an arrangement was made between the plaintiff and the defendant, John A. Neece, for the rebuilding of the mill, in which said John A. Neece undertook to convey to the plaintiff, "for and in consideration of the copartnership of putting up or rebuilding a saw mill in the Mill's Old Dam on Dean Swamp, with John Jordan, and the keeping up in a navigable condition the waste-way there-

in, do give and grant to the said Jordan privilege of backing water on our land to the height of ten feet live water, ingress and egress through my land to and from said mill and pond, so as not to damage any lands now in or may hereafter be put in cultivation, nor shall he be required to use or open a road that will throw him out of a direct course to said mill pond more than four hundred yards, and the right of using the most convenient soil or dirt in keeping up said mill dam and filling up around said mill and waste-way, the use of lumber yard two-thirds of the time, the same being his time of using said mill;" and on the same day the plaintiff, by his deed to the said John A. Neece and wife, in consideration of said copartnership, conveyed to them the same privileges, with the same reservations, in his land.

In pursuance of this arrangement, the mill was rebuilt, and continued to be used by the plaintiff and the Neeces upon the same terms as before until some time in 1887, when that mill was again burned. The plaintiff, wishing again to rebuild, after some negotiations with Mrs. Neece for that purpose, which proved to be fruitless, determined to rebuild the mill himself and so notified the defendants. After plaintiff had made his preparations to rebuild and made some progress in the work, defendants forbid his proceeding, and obstructing the work even to the extent of cutting the dam, the plaintiff, on the 17th of September, 1888, commenced this action. In his complaint he claims that he is the owner in fee of two undivided third parts of the property described in the deed from Mrs. McGrew, and that the defendant, Mrs. Neece, is the owner of the remaining one undivided third, and he demands judgment that defendants be enjoined from obstructing his work of rebuilding the mill or interfering therewith, or that the property be sold for partition.

The Circuit Judge held that the deeds under which plaintiff claims were not conveyances of the land, but simply "covenants to stand seized of the same to the use, and for the purposes of, the copartnership so long as it should continue and no longer;" that from the nature of the copartnership, it was without limit as to time, and there being no provision for its dissolution by either party, it could be determined by either party at any time, and was practically dissolved when the defendants refused their consent

to the rebuilding of the mill; and that the land having fulfilled the purposes to which it had been dedicated, reverts or remains in the parties in whom the legal title is vested. He therefore rendered judgment dismissing the complaint. From this judgment plaintiff appeals upon the several grounds set out in the record.

It seems to us that this appeal turns largely upon the construction of the deed from Mrs. McGrew to the plaintiff, for the plaintiff cannot, and, as we understand, does not, claim under the deed from John A. Neece, who was not the owner of the land, and who, so far as appears, had not the slightest authority to dispose of the property of his wife. We do not think that the deed from Mrs. McGrew to the plaintiff can be properly construed as a covenant to stand seized of the land to the use, and for the purpose of the copartnership, but, on the contrary, that it must operate as a conveyance of the land itself. The paper is manifestly very inartistically drawn, and hence the use of the word "give," which, it is urged, is not appropriate to a conveyance, is not a circumstance entitled to any weight. It was very natural that such a word should be used in a paper not resting on any valuable consideration, but based solely upon love and affection—intended to be a free gift. The paper does not purport to transfer *the use* of the land for any particular purpose, but *the land itself*. The language is, "do give and release unto him so much land * * * as will serve for the purpose of cutting a race," &c. It is not that the use of so much land as will be needed to cut the race, &c., is given. The words "serve for the purpose," relied upon to show the intention of granting an easement merely, and not the land itself, were manifestly used to indicate *the amount* of land conveyed. The parties probably did not know how much land would be needed to cut the race, &c., and hence the land intended to be conveyed is not described as so many acres or so many feet, but simply "so much land at, along, below, and above the mill dam, upon my land known by the name of the Mill's Old Dam, and adjoining his, as will serve for the purpose," &c.

There is not a word in the paper, so far as we can discover, which indicates that the idea of any copartnership was in the

minds of the parties. On the contrary, it seems to us that the language used in the paper, to which we must resort for its proper construction, shows that the intention of Mrs. McGrew was to give her son-in-law so much of her land as would be necessary to cut the race, &c., with a reservation to herself of one undivided third part thereof. The material element of a partnership, an agreement to share in the losses as well as the profits, is wholly wanting. During the time, two-thirds, which plaintiff was to have the use of the mill, Mrs. McGrew would have had no right to share in the profits, nor be responsible for any losses that might be incurred, and so likewise the plaintiff during the time, one-third, which Mrs. McGrew would be entitled to the use of the mill, the plaintiff would incur no liability for losses, nor be entitled to any portion of the profits. There is not only nothing in the deed to indicate that the idea of a copartnership was in the minds of the parties, but we hear nothing of it in the testimony for several years after the execution of the deed.

Holding then, as we do, that an undivided two-thirds interest *in the land* was conveyed to the plaintiff, our next inquiry will be as to the nature and extent of the estate thus conveyed.

2 It is very obvious that the deed upon its face, owing to the absence of any words of inheritance in the conveying part, creates nothing but a life estate in the plaintiff; but plaintiff contends that by the operation of equitable estoppel, arising from the use of the word "heirs" in the warranty clause, as well as from the long possession of the plaintiff and the acts of the parties, the estate conveyed should be construed to be an estate in fee, and not a mere life estate. It is conceded that an estate cannot be enlarged by the warranty, but the contention, as we understand it, on the part of the plaintiff is, that the use of the word "heirs" in the warranty clause is sufficient to show that the real intention of the grantor was to convey the fee, and that she and those claiming under her, are estopped from disputing a construction in accordance with such intention. We cannot accept this view, for if it should be adopted, it would fritter away and practically destroy the well settled and conceded rule that the warranty clause cannot operate so as to enlarge the estate granted. Indeed, in most cases where deeds drawn by unskilful draughts-

men, fail to carry the fee by reason of the omission of the requisite words of inheritance, the real intention of the parties is defeated, and we do not think the use of the word "heirs" in the warranty clause can be used to establish such intention, especially where found in a deed so inartificially drawn as this is. Nor do we see anything in the testimony to aid in raising such estoppel. We see no reason why the question as to the nature of plaintiff's estate should have been the subject of controversy or even conversation, before it was suggested by an examination of plaintiff's deed pending the negotiations for rebuilding the mill.

It seems to us, therefore, that the plaintiff and the defendant, Mrs. Neece, are now tenants in common of the land in question, he being entitled to an undivided two thirds for his life, with remainder to the heirs at law of Mrs. Catherine Mc-Grew, who died before the commencement of this action, and she [Mrs. Neece] being entitled to the remaining one-third in fee; and that the plaintiff is entitled to demand partition thereof, as provided for by section 1829, General Statutes.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.

MR. JUSTICE MCGOWAN concurred generally, and MR. JUSTICE POPE concurred in the result.