BRADFORD v. GRIFFIN.

1. LIMITATION OF ESTATES—REMOTENESS.—Where a tract of land was conveyed by deed in 1844 by a mother to her unmarried son on the consideration of natural love and affection, to him "for life, and after his death to the issue of his body," the mother thereby covenanted that she would stand seized to the uses of her son for life, with the reversionary estate in herself, the remainder to his issue for life being void.

2. IBID.—MERGER.—A subsequent deed to this same land by the mother in 1854, after the son had lawful issue of his body, made to him and his heirs and assigns forever, conveyed her reversionary estate to the son, who thereupon became seized in fee, his former life estate being merged in the greater estate by fee simple.

Before HUDSON, J., Sumter, May, 1893.

Controversy without action between J. Wesley Bradford and Thomas N. Griffin for specific performance. The opinion of J. S. G. Richardson, Esq., of September 9, 1854, was as follows:

John D. Ashmore proposes to sell to G. W. Bradford a plantation on Lynche's Creek, containing 1,012 acres of land. This plantation consists of two parcels of land: (1) A tract which J. D. Ashmore holds under a deed from his mother, Martha Ashmore, dated in June, 1844; and (2) a tract which he also holds under a deed from his mother, dated May 8, 1850. These two parcels originally belonged to John Durant. No paper title for them in John Durant has been exhibited to me. Such paper title may, however, exist, and perhaps can be found in the possession of the ordinary who administered on the derelict estate of John Durant. John Durant was, however, in the actual possession of these two parcels of land for many, perhaps      years before his death. He died in 1843 intestate, leaving his sister, Martha Ashmore, and certain nephews named Smith, children of a predeceased sister, his heirs at law. A partition has been made, and these two parcels allotted to Martha Ashmore, or to John D. Ashmore claiming under her.

Under such a state of facts, I think the title of Martha Ashmore a fair marketable one. The long possession of John Durant and of those claiming under him is sufficient to raise the presumption of a grant from the State. *Rogers* v. *McLeod*, 1 Rich., 19. The possession of John Durant in his lifetime, or of John D. Ashmore from June, 1844, to September, 1854, since his death, is sufficient to give title under the statute of limitations. And the partition between the heirs of John Durant, even if it be informal (of which I know nothing, it not having been known, or the facts in relation to it stated to me), would be enforced in equity. *Thompson* v. *Dulles*, 5 Rich. Eq., 870. The deed from Martha Ashmore to John D. Ashmore, dated in May, 1850, conveys the fee simple; and as to the tract of land embraced in that deed, there can be no doubt as to his right to convey it.

The difficulty arises under the deed of 1844. That deed is from a mother to her son; its consideration is natural love and affection, and nothing more. It belongs, therefore, to that

class of deeds known in the books as covenants to stand seized to uses. 4 Kent. It conveys the land, by its terms, to "John D. Ashmore *for life,* and after his death to the *issue* of his body *forever.*" The word heirs is nowhere used in it, either in terms or by reference and adoption. The questions are : (1) What estate does John D. Ashmore take? and (2) What estate, if any, is given to his issue?

1. If the words above extracted were contained in a will, I should say that John D. Ashmore took either a fee conditional at common law ( *Whitworth* v. *Stuckey,* 1 Rich. Eq., 404), or that he took an estate for life, with remainder to his issue in fee as purchasers (*McLure* v. *Young,* 3 Rich. Eq., 559); my own mind inclining to the latter opinion as the one conforming to the intention of the party creating the estate. But it is unnecessary to press the question to a conclusion in this point of view, for the instrument we are construing is a *deed* and not a will, and that should be borne in mind. All the authorities from Lord Coke to the present time lay down the rule, that (with certain exceptions, unnecessary to be here mentioned, as this case cannot be brought within any of them,) in order to create a fee by deed, the word heirs is necessary to be used. Co. Litt., sec. 1; 4 Kent, 5; 2 Bl. Com. Mr. Preston, in his treatise on Estates, vol. 2, p. 1, says: "To the creation or transfer of an estate in fee *by deed,* it is requisite that the land should be limited, *as to individuals,* to the individual *and his heirs.*" At page 4 he says : "No substituted words of perpetuity will, except in special cases, be allowed to supply their place. Therefore, a grant, in a deed, to a man and his assigns, or to him and his assigns forever, or to him and his successors," &c., "will not, by reason of the omission of a limitation to his heirs, pass more than an estate for life." And at page 484 of the same volume, speaking of the creation of estates tail, he says: "As far as relates to deeds, the rule is positive, that the word heirs must be used, either in terms or by reference and adoption. But the precise words, 'of the body,' are not necessary."

These authorities are, to my mind, conclusive that John D. Ashmore takes under the deed of June, 1844, only an estate for life. As I have already said, the word heirs is not to be found

in that deed, and no substituted form of expression importing the same idea will answer in its place; indeed, none is used. In that deed the substituted words are, "issue of his body." This expression is not synonymous with "heirs of the body." *Issue* embraces all descendants, and is applicable to them as well in the lifetime of the parent as after his death; while "heirs of the body" may embrace only a portion of the descendants, and does not embrace even them as long as the parent is living. I conclude, therefore, that John D. Ashmore's estate, under the deed of June, 1844, is for life only.

2. The next question is, What estate is given to the issue of John D. Ashmore? My opinion is, that no estate at all is given to them; and for the following reasons: I. In June, 1844, when the deed was executed, John D. Ashmore was unmarried and had no issue. The limitation, therefore, was to unborn issue, and was, of course, contingent. As that limitation is to the issue forever, and not to the issue and their heirs, they could no more claim a fee than John D. Ashmore can—their claim must, like his, be limited to an estate for life only. In 4 Kent, 283, note *a*, it is said a limitation to unborn children for life is not good. If that be good law, then this limitation being to unborn issue for life is not good. II. The limitation here is "to the issue of his body *forever*"—not to issue born in his lifetime, or within twenty one years and nine months afterwards, not to issue living at the time of his death, but to all his issue forever; that is, through all time to come, each to take an estate for life only. Such a limitation is void for remoteness. III. The deed, as I have already said, is a covenant to stand seized to uses. Its consideration, expressed on its face, was the donor's natural love and affection for her son, the donee, for life. Such a consideration was good as between her and him; but it was not sufficient to support a contingent limitation to his unborn issue—to persons not in being. "Bargain and sale and covenant to stand seized," says Chancellor Kent, 4 Com., 496, "are conveyances not adapted to settlements. They both require a consideration; and they could not be applied to the case of persons not *in esse*, for they had not contributed to the consideration when the conveyance was made." My conclusion, there-

fore, is, that as to the land embraced by the deed of June, 1844, John D. Ashmore has the life estate and his mother, Martha Ashmore, the reversion in fee—his children having no estate therein.  A conveyance, therefore, of the land from John D. Ashmore will be good, provided his mother, Martha Ashmore, shall, either before or after such conveyance, release to him her estate in reversion.

Let us suppose now, for the purposes of the argument, that the limitation to the issue of John D. Ashmore is valid.  Any claim on their part to more than a life estate under that limitation would be encountered, as I have already said, by the fatal objection that the limitation is not to them and their heirs. They can claim only a life estate, and is that estate vested or contingent?  It was contingent when the deed was executed, and I think, although John D. Ashmore now has children, still remains so.   There are cases arising upon *devises* and *marriage settlements*, where a limitation to unborn children or issue has been held to vest in a child as soon as it is born, subject to open and let in after born children.   4 Kent, 205, note; *Rutledge* v. *Rutledge*, Dud. Eq., 201.   But the rules of law applicable to limitations in devises, and to the equitable limitations contained in marriage settlements (*Corbett* v. *Laurens*, 5 Rich. Eq., 325), are not the same as those which govern legal limitations contained in the ordinary forms of conveyance.   I have not investigated this question very fully, having satisfied myself for the reasons above given that the issue take nothing at all; but I think, with Chancellor Harper (see *Cole* v. *Creyon*, 1 Hill Ch., 822), that, as a general rule, and especially where the question is upon a legal limitation under a deed *inter vivos*, where there is a gift to one for life, with remainder to a class of unascertained persons, as to children or issue, only those who answer the description at the death of the tenant for life are meant— not those who may have been born but have died before, or who may come into being afterwards.

It is clear, upon the authorities, that if the issue are entitled to a contingent remainder, their estate may be destroyed by destroying the life estate of John D. Ashmore.  A conveyance by Martha Ashmore to him of the reversion in fee will destroy

his life estate by merging it in the fee, and thus defeat the contingent remainder. Preston on Merger, 399; 4 Kent, 254. In this point of view, therefore, as well as the other which I have taken, if John D. Ashmore shall procure from his mother a release to him of her estate in reversion, his conveyance in fee of the land will be good.

No counsel for appellant.

*Mr. J. D. Blanding,* contra.

February 27, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiff and defendant, on the 5th day of January, 1893, under their hands and seals, entered into an agreement whereby the plaintiff covenanted to convey by deed to the defendant in fee simple a tract of land, containing 520 acres, more or less, situate in Sumter County, in this State, at the price of $5,000, and whereby the defendant covenanted to pay the said sum of $5,000 therefor. Both covenants were to be performed simultaneously on the 10th day of January, 1893. On the last mentioned date, the plaintiff tendered to the defendant his deed of conveyance, wherein he conveyed said lands to the defendant in fee simple, but the defendant declined to accept said deed and perform his covenants, because he alleged such title was defective in this, namely, that the plaintiff obtained title from one John D. Ashmore, who in turn obtained title thereto from Martha Ashmore, his mother, by two deeds, one dated 16th June, 1844, and the other dated 5th September, 1854; that by the first deed it was provided, "for and in consideration of the natural love and affection which I (Martha Ashmore) bear unto my son, John D. Ashmore, of Sumter District, have given, granted, and conveyed, and by these presents do give, grant, and convey, unto the said John D. Ashmore for life, and after his death to the issue of his body, all that plantation," &c. (including the land now in dispute). And in the second deed it was provided, "have bargained, sold, released, granted, and confirmed, and by these presents doth bargain, sell, release, grant, and confirm, unto the said John D. Ashmore and his heirs forever, all the right, title, interest, and

estate and reversion which I have or may have in and to the said plantation," &c. (including the land now in dispute). And the defendant claimed that the plaintiff deriving title through these deeds did not own a fee simple estate therein.   The result of that divergence of views has led to this contention for a specific performance of such contract.

The issues were heard by Judge Hudson, and he filed his decree on the 9th day of September, 1893, wherein he held that the title tendered by the plaintiff to the defendant was a good marketable title, which the defendant was bound to accept, for by the two deeds from Martha Ashmore to her son, John D. Ashmore, the said John D. Ashmore became invested with a fee simple title to said lands.   From this decree the defendant now appeals on two grounds : 1.  Because it is respectfully submitted that his honor erred in adjudging that the plaintiff is the owner in fee of the tract of land in controversy.    2.  Because his honor erred in not holding that John D. Ashmore could only convey a life estate to the plaintiff.

It would be well in the report of this case, that the opinion of Mr. J. S. G. Richardson on the title in question should appear.  The deed of Martha Ashmore to John D. Ashmore, dated 16th June, 1844, when construed in the light of the decisions of the courts of last resort of this State, certainly vest only a life estate in him.   Did the words, "and after his death to the issue of his body," in case they should be decided to be operative, create in such issue any greater estate than one for life?   If, therefore, this deed created only a life estate in John D. Ashmore, and after his death only a life estate "in the issue of his body," very certainly the reversion in said lands was in Martha Ashmore, and this reversion she conveyed to John D. Ashmore in fee simple, by her deed of 5th September, 1854, while he was vested already with a life estate, which life estate was after that last deed merged into and absorbed by the greater estate.   And as his deed to the plaintiff was made after the 5th day of September, 1854, and was in fee, it follows that thereby the plaintiff was thereby invested with a fee simple interest in said land.   Do our authorities sustain the first proposition that, under the deed of 1844, John D. Ashmore

held only a life estate in said lands? 2. Was the estate for life carved out for the issue of his (John D. Ashmore's) body void for remoteness? 3. Was there a reversionary interest or estate in such lands in Martha Ashmore in September, 1854, when she made the second deed to her son, John D. Ashmore?

The decisions of our courts certainly regard it as elementary law, that in conveyances of lands by deed there must be some words of inheritance to enable the grantee to claim a greater estate than a life estate. *Massey* ads. *Bratton*, 15 S. C., 284; *Varn* v. *Varn*, 32 *Id.*, 85; *McLeod* v. *Tarrant*, 39 S. C., 271. We regard it as settled that John D. Ashmore had vested in him no greater power than a life estate. Besides, the deed of 1844 itself in the premises, in the habendum and in the warranty, expressly limited his interest in the lands to a life estate. The same decisions would restrict the words, "the issue of his body," without words of inheritance in such deed (and there being an entire absence of other words in the deed whereby its construction could be so made as to supply the word heirs) to a life estate in such issue of the body. The only difficulty in the case is presented by this view of the rights of the parties, both grantor and the two sets of grantees—we mean John D. Ashmore, of the one part, and the issue of his body, of the other part—to wit: Martha Ashmore, having conveyed a life estate only to the said John D., and after his death a life estate only to his issue, held the legal title all the time, and, as is said in law, will be construed to have covenanted to stand seized to their respective uses in said lands.

So that, although John D. was unmarried, and had no issue of his body in 1844, when the first deed was made, yet in 1855, when Martha Ashmore made a conveyance of all her reversionary estate in said lands, unless the words, "issue of his body," can be construed as too remote and indefinite to support a life estate in such issue of the body, the said Martha Ashmore was unable to convey her reversion in such lands by reason of her covenant to stand seized to the use of the issue of the body of John D. after his death, and by reason of the further fact, that such issue of the body of John D. were *in esse* at that date, 5th September, 1854. It must be remembered that the act of the

General Assembly of this State, requiring the words, "issue,"
"issue of the body," &c., to be so construed in deeds and wills
as to be operative at the death of the first taker, having been
passed in the year 1853 after this deed was executed, plays no
part here. A long line of decisions in this State hold that such
words are too remote and indefinite to support an estate in
lands, where such words occur in a deed executed prior to the
act of 1853, before referred to. It follows, therefore, that
if Mrs. Ashmore had a reversionary interest in this tract
of land, her deed therefor, she not being under disabili-
ties, would convey to the life tenant, John D., the fee simple
estate; or, rather, the union of the reversion with the life estate
by merger of the life estate would operate to clothe the said
John D. with the fee simple. We do not see how there can be
any question of her being clothed with the estate in reversion;
for she, before she made the deed of 1844, owned the lands in
fee simple, and when she carved out a life estate for her son,
she still held such title, and the part carved out would revert
to her on John D. Ashmore's death.

It is the judgment of this court, that the judgment of the
Circuit Court be affirmed.