## HICKSON et al. v. DAVENPORT et al.

(District Court, W. D. South Carolina. February 23, 1918.)

1. DEEDS ☞93—WILLS ☞457—CONSTRUCTION—MEANING OF LANGUAGE—TECHNICAL WORDS.

   Though, under a statute providing that every devise shall be considered one in fee simple, unless against the manifest intention of the testator, words in a will would carry a fee simple, when the same words in a deed could carry only a life estate; and, while words may have a technical meaning in a will which they do not have in a deed, the courts, in construing either, seek to ascertain the intention and give it effect, and technical words, when used in their technical sense in a will, must be given effect as though found in a deed.

2. DEEDS ☞128—WILLS ☞608(1)—CONSTRUCTION—RULE IN SHELLEY'S CASE.

   The rule in Shelley's Case, when applicable, applies alike to a will or a deed.

3. DEEDS ☞128—CONSTRUCTION—APPLICATION OF RULE IN SHELLEY'S CASE—"ISSUE OF HER BODY."

   Though it is the rule in South Carolina that the word "issue" is a word of limitation, except when the language of the deed shows that it was intended as a word of purchase, where a deed conveyed to B. during her natural life, and after her death to the "issue of her body," with habendum to her "and then to the issue of her body, them, their heirs and assigns forever," but, if she should die without leaving issue, then the land to revert back to the grantor's estate, the words "issue of her body" meant children, and they took as purchasers, and the rule in Shelley's Case did not apply.

   [Ed. Note.—For other definitions, see Words and Phrases, Issue of the Body.]

4. DEEDS ☞123—ESTATES CREATED—"RIGHT HEIRS."

   "Right heirs" means heirs general, and creates an estate in fee simple.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Right Heir.]

In Equity. Suit by one Hickson and others against one Davenport and others. On motion by defendants to dismiss the bill. Motion denied.

McCullough, Martin & Blythe, of Greenville, S. C., for complainants.

Cothran, Dean & Cothran and Haynsworth & Haynsworth, all of Greenville, S. C., for defendants.

JOHNSON, District Judge. This is a motion by the defendants to dismiss the bill for want of equity. The rights of the parties depend

upon the construction of a deed. In 1844 Tully Bolling conveyed the land described in the bill "to my said daughter, Martha Ann Bolling, during her natural life and after her death to the issue of her body." The habendum clause is:

"Unto the said Martha Ann Bolling, and then to the issue of her body, them, their heirs and assigns, forever; but if any child of Martha Ann should die before she does, leaving issue, then the child or children to take the share its father or mother would of been entitled to if alive; but if Martha Ann should die without leaving issue living at her death, then this tract of land is to revert back to my estate and be disposed of as directed in my will."

Martha Ann subsequently intermarried with William Hickson. In 1875, after issue born, she conveyed the land to Francis M. Davenport, under whom defendants claim. In 1897 William Hickson died, and in 1915 Martha Ann died. The complainants are her children. If Martha Ann took a fee conditional under the deed of 1844, her conveyance in 1875 was effectual to carry the fee to Francis M. Davenport, and defendants' motion to dismiss the bill should be granted; but if she took a life estate only, the complainants are entitled to relief.

The decision of this motion has been delayed, as the court desired to examine practically all of the decisions of the highest courts of the state construing common-law deeds, trust deeds, and wills, with particular reference to the limitation of estates. It is essential, if possible, to harmonize the decisions and to conform to them, in order that there may be uniform rules of property, and so that both the state and federal courts may administer justice by the same standard. There have been many cases, and much confusion arises from loose expressions about the leniency of the courts in construing wills and brushing aside all forms in order to carry out trusts.

[1, 2] In this state the statute on wills provides that:

"No words of limitation shall be necessary to convey an estate in fee simple, but every gift of land by devise shall be considered a gift in fee simple unless such meaning is against the manifest intention of the testator," etc.

Of course, under this statute, words in a will would carry a fee simple, when the same words in a deed would carry no more than a life estate. It is also true that the same words may have a technical meaning in a will which they do not have in a deed. Nevertheless, the purpose of the courts in construing a will, a deed, or any other written instrument is to ascertain the intention of the maker, and to give effect to such intention if it can be done without violating established principles of law. Thus, when it is found that technical words are used in their technical sense in a will, the courts are bound to give effect to such words, just as they would if the same words were found in a deed. The rule in Shelley's Case, when applicable, applies alike to a will or a deed.

[3] The words used in the conveying clause of the deed we are called upon to construe are "issue of the body." If "issue" is used as a synonym of "heirs," the conveying clause would create a fee conditional in Martha Ann, and the rule in Shelley's Case would apply; but if the word "issue" was used in the sense of "children," the words in the conveying clause would carry to Martha Ann a life estate only, and

the rule in Shelley's Case would not apply. It is clear, therefore, that the meaning of the word "issue" will determine the character of the estate conveyed to Martha Ann. Technical words are given their technical meaning, unless the context shows clearly that they were used in some other sense. The words "heirs," or "heirs of the body," have a clearly defined and well-understood technical meaning. The word "issue" in a deed is not an apt word with a well-defined meaning, like "heirs" or "heirs of the body." The Supreme Court of South Carolina says that, whenever the word "issue" is used in either a deed or a will, it must be used in one of three senses: (1) It may describe a class of persons who are to take as joint tenants with the parties named; (2) it may be descriptive of a class who are to take at a definite, fixed time as purchasers; (3) it may denote an indefinite succession of lineal descendants, who are to take by inheritance. At the common law there can be no doubt that the word "issue" was not considered an apt word in a deed. Blackstone, who has no peer in clearness and accuracy of statement, says:

"As the word 'heirs' is necessary to create a fee, so in farther limitation of the strictness of the feudal donation, the word 'body' or some other word of procreation is necessary to make it a fee tail and ascertain to what heirs in particular the fee is limited. If, therefore, either the words of inheritance or words of procreation be omitted, albeit the words are inserted in the front, this will not make an estate tail. As, if the grant be to a man and the issue of his body, to a man and his seed, to a man and his children, or offspring— all these are only estates for life, there wanting the words of inheritance, 'his heirs.'"

In McMillan v. Hughes, 88 S. C. 298, 70 S. E. 804, the court quoted from McMichael v. McMichael, 51 S. C. 557, 29 S. E. 403, the following:

"The technical rule of the common law makes it essential to the creation of an estate in fee simple in a natural person by deed that there be in the deed an express limitation to such person and his 'heirs.' This rule is generally and inflexibly enforced in the United States, except where abrogated or modified by statute. While many states have altered this rule by statute, no such statute, as applicable to deeds, has been adopted in this state, and our courts have repeatedly and uniformly recognized and enforced the strict rule of the common law."

To support this the court cites Knotts v. Hydrick, 12 Rich. (S. C.) 318; Bratton v. Massey, 15 S. C. 284; Varn v. Varn, 32 S. C. 85, 10 S. E. 829; Jordan v. Neece, 36 S. C. 298, 15 S. E. 202, 31 Am. St. Rep. 869; Harrelson v. Sarvis, 39 S. C. 18, 17 S. E. 368; Bradford v. Griffin, 40 S. C. 468, 19 S. E. 76; Wilson v. Watkins, 48 S. C. 341, 26 S. E. 663.

Washburn, in his work on Real Property, in the fourth edition, at page 604, says:

"'Issue' in a will is either a word of purchase or inheritance, as will best answer the intention of the devisor. In the case of a deed, it is always taken as a word of purchase."

Lord Chancellor Hardwicke says:

"The word 'issue' in a will would be a word of limitation, but in a deed is always a word of purchase."

In Markley v. Singletary, 11 Rich. Eq. (S. C.) 397, the court said:

"It must be observed that the instrument which created these estates is a deed, and the term used, to describe those to whom the remainder is limited is 'issue.' The word 'issue' in a deed is designatio personæ, always a word of purchase. An estate in fee conditional * * * could not be created * * * by the use of this word, even when clearly designed as a word of limitation as 'to A. and his issue.' "

In Bradford v. Griffin, 40 S. C. 470, 19 S. E. 77, the court says:

"All the authorities from Lord Coke to the present time lay down the rule that (with certain exceptions unnecessary to be here mentioned, as this case cannot be brought within any of them), in order to create a fee by deed, the word 'heirs' is necessary to be used. Coke's Littleton, § 1; 4 Kent, 5; 2 Bl. Com. Mr. Preston, in his treatise on Estates (volume 2, p. 1), says: 'To the creation or transfer of an estate in fee by deed it is requisite that the land should be limited, as to individuals, to the individual and his heirs.' "

The words in the deed in Bradford v. Griffin, supra, were to a son "for life and áfter his death to the issue of his body" forever. The words in the deed we are called upon to construe are "to Martha Ann for life and after her death to the issue of her body." Tiedeman on Real Property, 434, says:

"Limitation to the sons, children, or issue of him who takes the life estate, will not be converted by the rule into a fee in the first taker, unless they are created by will and from a consideration of the whole will it appears that these words were used in the sense of heirs."

The early decisions in South Carolina harmonize perfectly with the common-law rule, but in the case of Holman v. Wesner, 67 S. C. 307, 45 S. E. 206, the word "heirs" was not used in a deed. The grant was "to John Lewis Haigler during his life and after his death to the lawful begotten issues of his body, and should the said John Lewis Haigler die without leaving such issues as above, or should his issues as above die without leaving lawful issues, then" over. The court held that this deed created a fee conditional in John Lewis Haigler. The court cited to sustain its conclusion two cases. Whitworth v. Stuckey, 1 Rich. Eq. (S. C.) 410, and Bethea v. Bethea, 48 S. C. 440, 26 S. E. 716. In Whitworth v. Stuckey, the devise was "to his son, 'for and during his natural life, and at his death to the lawful issue of his body; and if he should die without lawful issue, living at the time of his death, then' " over. Held a fee conditional. The court said:

"The words 'heirs of the body' and 'issue' are generally equivalent in a will, though the former are regarded as the stronger and more technical words."

In Bethea v. Bethea, supra, the devise was to the "wife 'during her natural life, and at her decease to my son R., and to the lawful issue of his body, and if the said R. should die without lawful issue,' " then over. It was held a fee conditional in R. Unquestionably, the decisions in these cases are sound and in perfect consonance with the general weight of authority; but it is obvious that the cases cited were not authority for the decision that the word "issue" in a deed was synonymous with the words "heirs of the body."

Standing alone, Holman v. Wesner would not be very persuasive or authoritative; but it is not alone. It has been distinctly recognized in Williams v. Gause, 83 S. C. 265, 65 S. E. 241. The court, reviewing various cases and after referring to Mendenhall v. Mower, 16 S. C. 311, McIntyre v. McIntyre, 16 S. C. 290, Holman v. Wesner, supra, and Markley v. Singletary, 11 Rich. Eq. (S. C.) 393, said:

"The correct rule is * * * that 'issue' is a word of limitation, except when the * * * deed shows that it was intended as a word of purchase."

In Adams v. Verner, 102 S. C. 9, 86 S. E. 211, the court again referred to the case of Williams v. Gause. In that same decision, in referring to Porter v. Lancaster, 91 S. C. 300, 74 S. E. 374, the court said:

"It will be observed that the word 'issue' was there used, which, though generally equivalent to the words 'heirs of the body' in a will, is not as strong, even in a will, as a word of limitation, as the words 'heirs of the body.'"

It being clearly established by the late decisions in this state that the word "issue" is a word of limitation, except when the language of the deed shows that it was intended as a word of purchase, it becomes necessary to examine the deed to see in what sense the grantor used that word. The same words in the same instrument should be given the same meaning. Bell's Rules of Interpretation, 161. The grantor says in the habendum:

"But if any child or children of Martha Ann should die before she does leaving issue, then the child or children to take the share its father or mother would of [have] been entitled to, if alive."

In Guy v. Osborne, 91 S. C. 293, 74 S. E. 617, the devise was "to my nephew, Samuel Blair, during his natural life, * * * and at his decease I give and bequeath to his surviving issue * * * my tract of land, * * * but should my said nephew die without any surviving issue of his body, * * * the said lands * * * herein bequeathed to his children, I allow to descend," etc. The court held that, in using the words "the said lands herein bequeathed to his children," the testator had evidently used the preceding words "surviving issue" in the sense of children.

I am not discussing the legal effect of the clause, but I am looking at it solely to ascertain if Bolling used "issue" as a synonym of "child" or "children," or "heirs." The meaning of the word in the granting clause being doubtful, we may resort to the habendum and other parts of the deed to find the quantity and quality of the estate to be enjoyed. We there find that unto Martha Ann is attached no word of inheritance, but it is to have and to hold "unto Martha Ann and then to the issue of her body, them, their heirs and assigns, forever." The grantor seems to have known the meaning of the word "heirs," for, if he used "issue" in the sense of children, he used the apt word in the right place to constitute Martha Ann's children purchasers of the fee. Thus the grantor clearly evinced an intention to qualify the words "issue of her body," so that they should not be descriptive of an indefinite line

of descent, but to indicate a new stock of inheritance, and to prevent the application of the rule in Shelley's Case.

Mr. Moorman, who is an authority on limitations of estates, says:

"The rule in Shelley's Case may be controlled by the manifest intention of the testator or grantor, where it appears upon the face of the instrument, first, that he meant to confine the first taker to an estate for life; and, second, that he meant to effectuate that intention by some clear and intelligent expression of a design to have the issue, heirs, or heirs of the body take by purchase, and not by descent."

In support of that proposition he cites Dott v. Willson, 1 Bay (S. C.) 457; Lemacks v. Glover, 1 Rich. Eq. (S. C.) 141; Myers v. Anderson, 1 Strob. Eq. (S. C.) 346, 47 Am. Dec. 537; Whitworth v. Stuckey, 1 Rich. Eq. (S. C.) 404; McLure v. Young, 3 Rich. Eq. (S. C.) 576; McIntyre v. McIntyre, 16 S. C. 297. Again he says:

"The authorities conclusively show that, when the words 'heirs,' 'heirs of the body,' or 'issue,' are so qualified by additional words as to evince an intention that they are not to be taken as descriptive of an indefinite line of descent, but are used to indicate a new stock of inheritance, the rule does not apply" citing Henry v. Archer, Bailey, Eq. (S. C.) 536; Myers v. Anderson, 1 Strob. Eq. (S. C.) 344; McLure v. Young, 3 Rich. Eq. (S. C.) 576; Templeton v. Walker, 3 Rich. Eq. (S. C.) 543, 55 Am. Dec. 646; Cox v. Buck, 5 Rich. (S. C.) 605; Evans v. Godbold, 6 Rich. Eq. (S. C.) 26; Fields v. Watson, 23 S. C. 46; McCown v. King, 23 S. C. 236.

Further he says:

"As where the words 'and to their heirs' are added, they so qualify and the remaindermen take as purchasers"—citing Shearman v. Angel, Bailey, Eq. (S. C.) 351, 23 Am. Dec. 166; Dott v. Cunningham, 1 Bay (S. C.) 455, 1 Am. Dec. 624; Lemacks v. Glover, 1 Rich. Eq. (S. C.) 143; McLure v. Young, 3 Rich. Eq. (S. C.) 576; McIntyre v. McIntyre, 16 S. C. 294.

The case of Danner v. Trescot, 5 Rich. Eq. (S. C.) 362, holds that the qualification by the addition of the words "and to their heirs" is too broadly laid down, and applies to personal estate, and not to real estate. But that is not true, because the courts have decided real estate cases since Danner v. Trescot and affirmed the older cases. Mr. Moorman says that it may be that Danner v. Trescot was distinguished from the older cases on the ground, stated by the circuit's decree, that the limitation there was to the heirs general and their heirs, and it seems to be authority to modify this qualification as stated to that extent.

[4] In the case of Danner v. Trescot, the limitation was "to D. for life, and after her death to and for the right heirs of her, their heirs and assigns, forever." "Right heirs" means heirs general, and creates an estate in fee simple. Once that is done, such superadded words can have no effect, as it is impossible to make the estate larger and the law prohibits an estate in fee simple, having once been given, from being cut down. Judge Wardlaw, in delivering the circuit decree in Danner v. Trescot, quotes Jarman as follows:

"Where the superadded words amount to a mere repetition of the preceding words of limitation, they are, of course, inoperative to vary the construction."

Judge Wardlaw proceeded to say:

"But to make the most of the" quotation from "Myers v. Anderson it is simply this, that 'if the limitation be to the heirs of the body, or to the issue, and to their heirs, this constitutes them purchasers.'"

But he asks: "Where is the authority for saying, * * * if the limitation be to the heirs general * * * and their heirs," that the words "their heirs" can qualify heirs generally? Thus it is seen upon close analysis that Judge Wardlaw never questioned the soundness of the rule that "heirs of the body" or "issue" could be qualified by the addition of the words "and their heirs." The doctrine of qualification is as well established by the English decisions and by the decisions in this state as the rule in Shelley's Case itself.

Another case which seems to question the doctrine of qualification is Clark v. Neves, 76 S. C. 484, 57 S. E. 614, 12 L. R. A. (N. S.) 298. Here the limitation was to C. "for and during her natural life, and at her death the said premises are to belong of right in fee simple to the lineal heirs of the said Eleanor B. Clark forever." The only words of inheritance are "lineal heirs." The court properly held that it was a fee conditional. The plaintiff in the action, however, was contending that the words "of right in fee simple, forever," were words of qualification, which constituted lineal heirs purchasers. This contention was untenable. I subscribe unhesitatingly to the court's construction of the deed, but I cannot agree with the court in its reasoning in one or two particulars. For instance, the court said:

"If the deed in the present case had been unto A. for life, and at her death to her lineal heirs, their heirs and assigns, forever, A. would take a fee conditional."

The court was not construing any such limitation, and this expression must be regarded as a dictum, for it is absolutely contrary to the decisions in this state. To sustain this dictum, the court referred to four cases—Danner v. Trescot, 5 Rich. Eq. 356; already referred to; Miller v. Graham, 47 S. C. 288, 25 S. E. 165; Kennedy v. Colclough, 67 S. C. 122, 45 S. E. 139; and Davenport v. Eskew, 69 S. W. 292, 48 S. E. 223, 104 Am. St. Rep. 798. It is not necessary to say more than has already been said in regard to Danner v. Trescot. In Miller v. Graham, the land was conveyed "'to * * * India J. Miller and the heirs of her body,' * * * 'to have and to hold, etc., unto the said India J. Miller and the heirs of her body, to her and their heirs and assigns, forever.'" In that case there was no life estate, but the conveyance was to take effect immediately, and of course Mrs. Miller had no heirs. The only question determined by the case was that it was an ordinary common-law deed, without a life estate being carved out, and that the superadded words were not sufficient to make the words "heirs of the body" mean children. In Kennedy v. Colclough, the limitation was "to A. for life and after her death to her heirs at law forever." "Heirs" was the only word of limitation and inheritance, and hence the first taker unquestionably took an estate in fee. The word "forever," not being a word of inheritance, could have and did have

no effect whatever on the estate conveyed. In Davenport v. Eskew, the grant was "to A. for life and then to be distributed equally between her remaining heirs." The only word of limitation was "heirs," which created in the first taker an estate in fee simple, and the rule established in the case of Danner v. Trescot would apply.

One other loose expression in the case of Clark v. Neves should not pass unnoticed. That is where the court, in referring to a number of cases that had established the doctrine of qualification in this state, passed the cases by with the remark that they were will cases, and more latitude was allowed in the construction of wills than in the construction of deeds. The case the court was considering had no qualifying words, and this is another unnecessary dictum, and is in direct conflict with numerous authorities. When the rule in Shelley's Case does apply, there is no difference in its application in will cases and deed cases, nor is there any difference in construing the qualifications which will take a case out of the rule. If the superadded words are sufficient, whether in a will or in a deed, to show that the maker intended to create a new stock of inheritance in the heirs of the body or the issue, then such new stock take by purchase, and not by descent.

Reading and construing the deed under consideration in the light of the decisions of the highest courts of this state prior to Holman v. Wesner, there can be no doubt that Martha Ann Bolling took a life estate, with remainder to her children as purchasers; and read even in the light of the recent decisions, omitting unnecessary and uncalled-for dicta, I am still impelled to hold that the "issue of the body" meant children, and that the superadded words in the habendum so qualified them as to make them purchasers.

If the decisions in this state are irreconcilable, then under the authority of Seligman v. Burgess, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, and Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, it would be the duty of this court to construe the deed in the light of the decisions at the time of its execution, because the maker is presumed to have known the established rules of property and contracted with reference thereto.

Wherefore the motion to dismiss the bill for want of equity is refused.