DAVENPORT et al. v. HICKSON et al.

(Circuit Court of Appeals, Fourth Circuit. October 7, 1919.)

No. 1734.

1. DEEDS ⏴123—"HEIRS," "HEIRS OF THE BODY," "ISSUE," MEANING CHILDREN.
   Under the law of South Carolina, as settled by decision, the words "heirs," "heirs of the body," or "issue," must be construed to mean children, when the testator or grantor clearly indicates that he used the words in that sense.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs; Heirs of the Body; Issue.]

2. DEEDS ⏴129(4)—LIMITATION TO "ISSUE" OF GRANTEE'S BODY CREATING LIFE ESTATE IN GRANTEE.
   A deed conveying land to a daughter "during her natural life, and after her death to the issue of her body," and providing that, if any child or children of the daughter should predecease her leaving a child or children, such child or children should take the share of the parent, but that, if the daughter should die without leaving any issue living, the land should revert to grantor's estate, *held* to use the word "issue" as meaning children, and as including children of a deceased child, and to vest the daughter with a life estate only.

Appeal from the District Court of the United States for the Western District of South Carolina, at Greensville; Joseph T. Johnson, Judge.

Suit for partition by Tully Hickson and others against J. A. Davenport and others. Decree for complainants, and defendants appeal. Affirmed.

See also (D. C.) 248 Fed. 319.

T. P. Cothran and H. J. Haynsworth, both of Greenville, S. C. (Cothran, Dean & Cothran and C. F. Haynsworth, all of Greenville, S. C., on the brief), for appellants.

B. F. Martin and E. M. Blythe, both of Greenville, S. C., for appellees.

Before PRITCHARD and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. On March 10, 1844, Tully Bolling, for the consideration of love and affection, conveyed a tract of land containing 600 acres, more or less, in this language:

"To my said daughter Martha Ann Bolling during her natural life and after her death to the issue of her body." "To have and to hold all and

singular the said premises unto the said Martha Ann Bolling and then to the issue of her body, them, their heirs and assigns forever. But if any child or children of the said Martha Ann should die before she does, leaving issue, then the child or children to take the share the father or mother would have been entitled to if alive. But if the said Martha Ann should die without leaving any living issue at her death, then this tract of land is to revert back to my estate, and be disposed of as directed in my will. And I, the said Tully Bolling, do hereby bind myself, my heirs, executors and administrators, warrant and forever defend all and singular the premises above mentioned unto the said Martha Ann and the issue of her body after my death the right of the property not to be changed till then from myself, and from my heirs and from every person whomsoever lawfully claiming or to claim the same or any part thereof."

Martha Ann Bolling having married William Hickson in 1859, on February 15, 1875, she and her husband, after issue born, undertook to convey the land in fee simple with general warranty to F. M. Davenport. Martha Ann Hickson died October 20, 1915. Several of her children predeceased her unmarried, leaving their father, William Hickson, and their brothers and sisters their heirs at law. The surviving children are the complainants and the defendant Hattie Burry.

In this action for partition the complainants allege that the deed of Tully Bolling conveyed a life estate to Mary Ann with remainder to her children. The defendants, who claim under the deed of Mary Ann and her husband to Davenport, moved to dismiss the bill for lack of equity, on the ground that the deed from Tully Bolling falls under the rule in Shelley's Case, and that the deed of Mary Ann and her husband, made after issue born, carried a good title in fee. The District Court took the view of the complainants and decreed partition.

The rule of the common law generally laid down by the authorities is that, while "issue" is usually a word of limitation in a will, it is a word of purchase in a deed. 2 Wash. on Real Property, 655; 2 Jarman on Wills, 331. It was so held in South Carolina in Williams v. Kibler, 10 S. C. 414; Bradford v. Griffin, 40 S. C. 468, 19 S. E. 76. We should hesitate to hold that these two cases made a fixed rule of property in South Carolina in the face of the numerous later decisions holding explicitly that at common law, in a deed as well as in a will, the word "issue" is a word of limitation, unless the context shows it was used in a more restricted sense to denote purchasers. Holman v. Wesner, 67 S. C. 309, 45 S. E. 206; Williams v. Gause, 83 S. C. 265, 65 S. E. 241; Arledge v. Arledge, 86 S. C. 237, 68 S. E. 549; Sligh v. Sligh, 99 S. C. 307, 83 S. E. 260.

[1] Under these later cases if the granting clause to Martha Ann Bolling during her natural life, and after her death to the issue of her body, stood alone, the word "issue" would be a word of limitation and the title of Martha Ann would be a fee conditional. But it is not necessary to decide that point. The case is governed by another rule entirely free from doubt: The words "heirs," or "heirs of the body," or "issue," must be construed to mean children when the testator or grantor clearly indicates that he has used the words in that sense. Moone v. Henderson, 4 Desaus. (S. C.) 459; Holeman v. Fort, 3 Strob. Eq. (S. C.) 66, 51 Am. Dec. 665; Bailey v. Patterson, 3 Rich. Eq. (S. C.) 156; Duncan v. Harper, 4 S. C. 76; Hayne v. Irvine, 25 S. C. 289; Lott

v. Thompson, 36 S. C. 38, 15 S. E. 278; McLeod v. Tarrant, 39 S. C. 280, 17 S. E. 773, 20 L. R. A. 846; Shaw v. Robinson, 42 S. C. 342, 20 S. E. 161; Reeves v. Cook, 71 S. C. 275, 51 S. E. 93; Smith v. Clinkscales, 102 S. C. 242, 85 S. E. 1064.

[2] We think the grantor clearly said that by issue he meant child or children when, after repeating in the habendum that his conveyance was to Martha Ann Bolling and then to the issue of her body, he continues:

"But if any child or children of the said Martha Ann shall die before she does, leaving issue, then the child or children to take the share its father or mother would have been entitled to if alive."

Reduced to its simplest form, the grantor said this: I grant the land to Mary Ann for her life, and at her death to her issue, their heirs and assigns; but if any child or children of Mary Ann should predecease her leaving issue, then the child or children to take the share the parent would be entitled to if living. He thus uses "child" and "children" as the equivalent of "issue," not only in referring to the issue of Mary Ann, but to the issue of any child who may predecease her. We think the grantor could hardly have made the matter clearer if he had said in so many words "issue" in these clauses meant "children."

It is true that, when he came to direct the reversion in case "Mary Ann should die without leaving any issue living at her death," he evidently had in his mind the conception that the issue of Mary Ann should include, not only her own children, but the child or children of any child who might predecease her.

In this latter clause he was providing for the course of the title only in case the previous provisions should fail, and he had before provided that at the death of Mary Ann it should go to her issue, meaning her child or children, and their issue, meaning a child or children of any deceased child, who would take the parent's share. Evidently, therefore when he provides for a reverter for failure of issue of Mary Ann at the time of her death, he means not issue generally, but her child or children and the child or children of any predeceased child. Thus we think the grantor has clearly expressed the definition of issue which was in his mind, and that when he was providing for the contingency which has happened he used it in the sense of children of Mary Ann.

This statement is merely an elaboration of what the grantor clearly said in inartificial language. Happily we are allowed to give effect to the obvious meaning of the deed without violation of any artificial rule of the common law. This construction of the deed renders unnecessary consideration of the question whether the words "them, their heirs and assigns forever," in the habendum "unto the said Mary Ann Bolling and then to the issue of her body, them, their heirs and assigns forever," standing alone, would so break the indefinite line of inheritance as to take the deed out of the rule in Shelley's Case.

Affirmed.